COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Athey and Callins
Argued at Arlington, Virginia

CHARLES H. BROWN, III, ET AL.

                                                MEMORANDUM OPINION* BY
v.        Record No. 1467-23-4               JUDGE CLIFFORD L. ATHEY, JR.
                                                      JUNE 3, 2025
RICHARD B. GRUNDY


           FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Michael F. Devine, Judge

           Norman A. Thomas (Brian V. Ebert; Norman A. Thomas, PLLC;
           Brian V. Ebert, P.C., on briefs), for appellants.

           Alan B. Croft (Lawrence J. McClafferty; McCandlish & Lillard,
           P.C., on brief), for appellee.


       Following a jury trial in the Circuit Court of Fairfax County ("circuit court"), Dr. Charles

H. Brown, III, and his practice, Charles H. Brown, III, D.D.S., P.C. (collectively "Dr. Brown"),

were found liable in the total amount of $1.85 million dollars for defamation per se as a result of

Dr. Brown publishing a letter to patients of his practice on December 4, 2018 (the "December

4th letter").  The December 4th letter detailed Dr. Brown's alleged reasons for terminating

Dr. Richard B. Grundy's ("Dr. Grundy") employment with the dental practice.  On appeal,

Dr. Brown assigns error to the circuit court for failing to perform its "gatekeeping function" by

submitting four allegedly nonactionable statements to the jury.  However, since we find the four

challenged statements are both provably true or false and contain the requisite "sting" to

Dr. Grundy's reputation as a dentist, we find the statements actionable for defamation and affirm

the circuit court's judgment.

---

       * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## I. BACKGROUND

Dr. Brown and Dr. Grundy met while attending dental school together in the 1990s. In 2013, Dr. Brown hired Dr. Grundy to work for Charles H. Brown, III, D.D.S., P.C. as a licensed dentist. Over the course of Dr. Grundy's employment with the dental practice, the professional relationship between the dentists became strained due to, inter alia, disputes over access to "patient personal financial and account data." Eventually, in the fall of 2018, Dr. Brown and Dr. Grundy filed formal complaints against each other with the Virginia Department of Health Professions. On December 6, 2018, Dr. Brown subsequently terminated Dr. Grundy's employment with Charles H. Brown, III, D.D.S., P.C. When Dr. Grundy was terminated, the dental practice employed "7-9 full time associates," and Dr. Grundy estimated that he was the primary dentist for approximately 750 patients. Dr. Brown drafted and published a December 4, 2018 letter, which was mailed to the patients of the dental practice, outlining his alleged reasons for terminating Dr. Grundy.[1] In addition, the December 4th letter apologized "for the situation," committed to providing "additional information," and offered to review any past treatment provided by Dr. Grundy.

Dr. Grundy subsequently filed a complaint in the circuit court alleging, inter alia, that Dr. Brown had defamed him based upon statements contained within the December 4th letter. He further alleged that the defamatory statements were false and "damaged his professional reputation."[2] Dr. Brown demurred to the complaint, claiming that the allegations in the complaint were insufficient as a matter of law because the complaint failed to state a claim for

---

[1] Another version of the December 4th letter, dated December 6, 2018, was also sent to patients. In the December 6th letter, Dr. Brown removed one sentence, which offered retreatment at no cost to patients, because Dr. Brown "didn't like the way it sounded" and "was worried it could be misconstrued." Only the December 4th letter is relevant to this appeal.

[2] Only the defamation per se claim is relevant to this appeal.

defamation per se and failed to set forth the alleged defamatory statements verbatim.  Dr. Grundy opposed the demurrer, asserting that by attaching the December 4th letter to the complaint and incorporating its contents therein, "the defamatory statements have indisputably been set forth *in haec verba*."  The circuit court overruled the demurrer, thereby permitting the defamation per se claim to move forward.

A jury trial on the claim commenced on February 18, 2020.  On March 16, 2020, the trial was halted for almost two years due to the COVID-19 pandemic.  During the interim, the circuit court considered the parties' proposed jury instructions.  On March 14, 2022, prior to the trial recommencing, Dr. Brown moved to strike[3] certain allegedly defamatory statements from proposed Jury Instruction C-1, contending that the circuit court should limit the jury instruction to only those statements in the December 4th letter that they argued were actionable as defamation.  The parties subsequently argued their positions with respect to the contents of Jury Instruction C-1 during two separate hearings.  The circuit court, after considering all the proposed jury instructions tendered by both parties, including Jury Instruction C-1, modified the proposed Jury Instruction C-1, which directed the jury to find Dr. Brown liable for defamation per se if, among other things, the jury believed that he had made one of the following seven statements in the December 4th letter:

  a) "Unfortunately, Dr. Grundy has refused to adhere to some of those guidelines/regulations and the board of dentistry is currently looking into those issues."

  b) "Dr. Grundy has been advised on this but has continued to refuse to adhere to certain guidance specifically given to me by the Board of Dentistry regarding his actions and lack of compliance."

---

[3] While the motion was styled as a motion to strike, the circuit court noted—and Dr. Brown agreed—that it was "not a motion to strike the evidence," rather, it was "about crafting an appropriate jury instruction" to remove nonactionable statements from the list of statements presented to the jury as those actionable for defamation.  Indeed, the motion purports to "move th[e] [c]ourt to exercise its gatekeeping function and only permit statements found actionable as defamation to be presented to the jury."

c) "I have no explanation for his refusal and he would not provide one to me."

d) "I cannot go through the entire list, in part to protect Dr. Grundy's privacy, so I will just touch on some of the more serious causes that you have a right to know and that I feel I can disclose."

e) "There are other serious causes that I cannot disclose."

f) "In addition to the reasons above, the termination is also due, in part, to complaints. If Dr. Grundy has said anything to you in the office or on the phone, that makes you uncomfortable, or that you consider inappropriate, please notify a manager or me so that we can confidentially and privately document the interaction."

g) "There is some additional information that I am required to give to you. The [D]epartment of Health and Human Services OCR oversees HIPAA and the protection of patients' private information. There are also now issues related to Dr. Grundy's handling of his former patients' protected personal and private information."

Jury Instr. C-1.

The trial recommenced on April 18, 2022, and at the conclusion of all the evidence, the circuit court instructed the jury, including the modified Jury Instruction C-1. In addition, although Jury Instruction C-1, as modified, included only seven actionable statements, the jury was permitted to consider those seven actionable statements in the context of the entire December 4th letter, which had previously been admitted during trial as Plaintiff's Exhibit 51. Moreover, the circuit court utilized a verdict form that did not require the jury to designate which, if any, of the seven allegedly actionable defamatory statements the jury determined were defamatory.

Following closing arguments, the jury retired to deliberate. The jury returned its verdict on May 2, 2022, finding Dr. Brown liable for defamation per se and awarding Dr. Grundy $1.5 million in compensatory damages and $500,000 in punitive damages. The circuit court subsequently reduced the punitive damages award to the statutory maximum of $350,000 and

- 4 -

entered final judgment on the verdict in favor of Dr. Grundy in the total amount of $1.85 million dollars. Dr. Brown appealed.

II. ANALYSIS

"In Virginia, . . . the law of defamation historically has protected a basic interest. The individual's right to personal security includes his uninterrupted entitlement to enjoyment of his reputation. 'Society has a pervasive and strong interest in preventing and redressing attacks upon reputation.'" *Gazette, Inc. v. Harris*, 229 Va. 1, 7 (1985) (citation omitted) (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966)). Generally, to prove defamation by publication, a plaintiff must prove that there was a "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 480 (2013) (quoting *Jordan v. Kollman*, 269 Va. 569, 575 (2005)). Dr. Brown does not challenge the elements of publication and intent. Instead, his appeal focuses on whether the four challenged statements are "actionable," meaning that each is "capable of being proved true or false," *Handberg v. Goldberg*, 297 Va. 660, 668 (2019) (quoting *Tharpe*, 285 Va. at 482), and "has 'the requisite defamatory "sting" to one's reputation,'" *id.* (quoting *Schaecher v. Bouffault*, 290 Va. 83, 92 (2015)).

On appeal, Dr. Brown challenges the actionability of Statements (a), (c), (f), and (g) in Jury Instruction C-1, contending that the referenced statements are not capable of being proven true or false, lack the requisite "sting," or both. Dr. Brown further contends that since no special verdict form was utilized requiring the jury to identify the specific statement or statements it found defamatory per se, if any of the four challenged statements are not actionable as defamation per se, this Court must reverse the verdict and remand the claim to the circuit court.

A. *Standard of Review*

"Whether an alleged defamatory statement is actionable is a question of law to be reviewed de novo." *Nestler v. Scarabelli*, 77 Va. App. 440, 452-53 (2023). Thus, "we conduct a de novo

- 5 -

review of [each] statement in question to independently determine (a) not 'whether the alleged defamatory statement is true or false, but whether it is capable of being proved true or false,' and (b) whether it has 'the requisite defamatory "sting" to one's reputation.'" *Handberg*, 297 Va. at 668 (first quoting *Tharpe*, 285 Va. at 482; and then quoting *Schaecher*, 290 Va. at 92). "In evaluating whether language is actionable, we take all inferences in favor of the plaintiff, but such inferences cannot rise above the language of the documents or statements themselves." *Schaecher*, 290 Va. at 93; *see also Webb v. Virginian-Pilot Media Co., LLC*, 287 Va. 84, 89 (2014) ("In determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor." (quoting *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 8 (1954))).

B. *Requirements for Actionability*

"For a statement to be actionable, it must 'have a provably false factual connotation and thus [be] capable of being proven true or false.'" *Schaecher*, 290 Va. at 98 (alteration in original) (quoting *Cashion v. Smith*, 286 Va. 327, 336 (2013)). "[Statements] of opinion, however, are constitutionally protected and are not actionable as defamation." *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47 (2009). Defamatory statements can be direct and unequivocal, but they can also be "statements made by inference, implication, or insinuation." *Id.*

"[A] speaker's choice of words and the context of an alleged defamatory statement within the speech as a whole are factors to consider when deciding if a challenged statement is one of fact or opinion." *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 133 (2003) (citing *Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681, 685 (4th Cir. 1989)). "Where . . . a plaintiff alleges that he has been defamed not by statements of fact that are literally true but by an implication arising from them, the alleged implication must be reasonably drawn from the words actually used." *Webb*, 287 Va. at 89;

*see also Pendleton v. Newsome*, 290 Va. 162, 172 (2015) ("Virginia law recognizes a claim for defamation by inference, implication or insinuation . . . .").

In addition, for a statement to be defamatory, it "must have the requisite defamatory 'sting' to one's reputation." *Schaecher*, 290 Va. at 92. Words may be "defamatory on their face or contain sufficient innuendo to imply defamatory meaning."[4] *Id.* at 93. Moreover,

> Because Virginia law makes room for a defamation action based on a statement expressing a defamatory meaning "not apparent on its face," evidence is admissible to show the circumstances surrounding the making and publication of the statement which would reasonably cause the statement to convey a defamatory meaning to its recipients. Allegations that such circumstances attended the making of the statement, with an explanation of the circumstances and the defamatory meaning allegedly conveyed, will suffice to survive demurrer if the court, in the exercise of its gatekeeping function, deems the alleged meaning to be defamatory.

*Pendleton*, 290 Va. at 172.

"[D]efamatory language 'tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous.'" *Schaecher*, 290 Va. at 92 (quoting *Moss v. Harwood*, 102 Va. 386, 392 (1904)). "Each of these descriptions connotes the requisite defamatory 'sting,' while 'language that is insulting, offensive, or otherwise inappropriate, but constitutes no more than "rhetorical hyperbole"' is not defamatory." *Id.* (quoting *Yeagle v. Collegiate Times*, 255 Va. 293, 296 (1998)). The trial court therefore has an important "gatekeeping function" to perform, by which it "determine[s] as a matter of law 'whether a statement is reasonably capable of defamatory meaning before allowing the matter to be presented

---

[4] Innuendo is "an explanation of the allegedly defamatory meaning of the statement, if it is not apparent on its face." *Schaecher*, 290 Va. at 92 (quoting *Webb*, 287 Va. at 88). "The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but it can not introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain." *Id.* at 93 (quoting *Webb*, 287 Va. at 89-90).

to a finder of fact.'" *Theologis v. Weiler*, 76 Va. App. 596, 605 (2023) (quoting *Schaecher*, 290 Va. at 94).

False and defamatory statements that "prejudice [a] person in his or her profession or trade" or "impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment," are actionable as defamation per se and do not require proof of special damages. *Fleming v. Moore*, 221 Va. 884, 889 (1981). To be actionable as defamation per se, however, "the words must contain an imputation that is 'necessarily hurtful' in its effect upon [the] plaintiff's business and must affect him in his particular trade or occupation." *Id.* at 889-90 (quoting *James v. Haymes*, 160 Va. 253, 261-62 (1933)). "There must be a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff." *Id.* at 890.[5]

Here, Dr. Brown argues that the circuit court committed reversible error by including Statements (a), (c), (f), and (g) in Jury Instruction C-1. Dr. Brown argues that these statements are not actionable because they are statements of opinion, lack "sting," or both. We address each statement in turn.

---

[5] "The presumption of damages is the critical distinction between defamation *per se* and other actions for defamation." *Fleming*, 221 Va. at 888 n.3. At times, Dr. Brown argues that the statements are not actionable as defamation per se, but at no point did Dr. Brown object on such grounds, and the argument is therefore waived. *See id.* at 889-90; Rule 5A:18; Code § 8.01-384.

C. *Statement (a): "Unfortunately, Dr. Grundy has refused to adhere to some of those guidelines/regulations and the board of dentistry is currently looking into those issues."*[6]

Dr. Brown argues that this statement "necessarily is one of opinion" because the Board of Dentistry, not Dr. Brown with his "independent viewpoint," interprets guidelines and regulations. We disagree.

This sentence contains two independent clauses, each capable of being proven true or false in the context of the paragraph in which they appear. The first clause, "Unfortunately, Dr. Grundy has refused to adhere to some of those guidelines/regulations," is couched in terms of Dr. Grundy's *refusal* to adhere to guidelines and regulations promulgated by "[t]he Virginia Board of Dentistry and the State of Virginia." This statement is capable of being proven true or false because evidence could have been adduced showing that Dr. Grundy did, or did not, *refuse* to adhere to such guidelines or regulations. *Cf. Tharpe*, 285 Va. at 482 (noting that the statement "Tharpe told me that Tharpe was going to screw the Authority like he did Fort Pickett" was "indisputably capable of being proven true or false" because "[i]t [wa]s neither an expression of Saunders' opinion that

---

[6] The jury had the December 4th letter to review in full, and the paragraph in which this statement appears reads:

> The Virginia Board of Dentistry and the State of Virginia have guidelines and regulations that govern the practice of dentistry in this state. Dentists that do not follow those guidelines can be disciplined, fined and even have their ability to practice dentistry restricted or revoked. *Unfortunately, Dr. Grundy has refused to adhere to some of those guidelines/regulations and the board of dentistry is currently looking into those issues.* This has created significant problems and potential liability for the practice. Dr. Grundy had been advised on this but has continued to refuse to adhere to certain guidance specifically given to me by the Board of Dentistry regarding his actions and lack of compliance. I have no explanation for his refusal and he would not provide one to me. The board may eventually issue a decision regarding this matter that may be publicly available.

(Emphasis added).

- 9 -

Tharpe made this statement to Saunders, nor [wa]s it dependent on Saunders' viewpoint"). The second clause, "[T]he board of dentistry is currently looking into those issues," refers to Dr. Grundy's purported refusal to adhere to the aforementioned guidelines and regulations. This portion of the statement is also capable of being proven true or false because evidence could have been adduced showing that the Board of Dentistry was, or was not, "looking into those issues"— i.e., investigating Dr. Grundy's compliance with the guidelines and regulations.

Moreover, the statement as a whole insinuates that Dr. Grundy had flouted direct guidance from the Board, thus making Statement (a) a provably false statement by "inference, implication, or insinuation." *Hyland*, 277 Va. at 47. The paragraph begins by stating that the Board of Dentistry and the Commonwealth promulgate guidelines and regulations and noting the consequences of a dentist's failure to comply with those rules. After alleging that Dr. Grundy had "refused to adhere" to these rules and that the Board of Dentistry was investigating, Dr. Brown wrote, "Dr. Grundy . . . has continued to refuse to adhere to certain guidance specifically given to me by the Board of Dentistry regarding his actions and lack of compliance." Dr. Brown purports to have offered his own opinion on the issue while "admit[ting] that he is not the decisionmaker." But by consistently referring to and invoking the authority of the Board of Dentistry, the reasonable implication is that Dr. Grundy is currently under investigation for violating the regulations and guidelines of the Board and the Commonwealth of Virginia.[7] This implication is provably true or false, and thus, so is

---

[7] Dr. Brown's analogy to *Sroufe v. Waldron*, 297 Va. 396 (2019), also fails. In *Sroufe*, a principal sued the district superintendent for writing a letter about how she was allegedly not ensuring the proper application of the Virginia Alternative Assessment Program ("VAAP") participation criteria to her school's students with disabilities. 297 Va. at 396-97. At trial, the witnesses described VAAP criteria as "inherently subjective," and the plaintiff's own evidence indicated that the superintendent's statement was "simply opinion." *Id.* at 399-400. After the jury returned a verdict for the plaintiff and the defendant appealed, the Supreme Court ruled that the trial court had not correctly performed its gatekeeping function, as it submitted a statement of opinion to the jury. *Id.* at 399. The Court reasoned:

- 10 -

Statement (a). Hence, the circuit court did not err in submitting Statement (a) to the jury as a statement actionable for defamation per se.[8]

D. *Statement (c): "I have no explanation for his refusal and he would not provide one to me."*[9]

Dr. Brown focuses on the second part of the statement ("he would not provide [an explanation] to me") and argues that the statement lacks "sting" and merely "bespeaks friction between Dr. Grundy and Dr. Brown." Dr. Brown's argument invites this Court to view the statement in isolation instead of in the context of the entire letter. This, we may not do. *See Hyland*, 277 Va. 47.

Statement (c) appears in the same paragraph in which Dr. Grundy is repeatedly alleged to have violated the Board of Dentistry's guidelines and regulations. In fact, by the time Statement (c) appears, Dr. Brown has mentioned Dr. Grundy's purported refusal twice. The first time was in Statement (a): "Unfortunately, Dr. Grundy has refused to adhere to some of those guidelines . . . ." The second time came two sentences later: "Dr. Grundy . . . has continued to refuse to adhere to certain guidance specifically given to me by the Board of Dentistry regarding his actions and lack of compliance." Statement (c) directly follows. The "refusal," then, refers to Dr. Grundy's alleged

---

> Dr. Sroufe was able to reach an independent conclusion about Waldron's . . . application of the VAAP participation criteria. And, as Waldron's supervisor rather than subordinate, Dr. Sroufe's divergent opinion had greater weight and came with substantial consequences. But it remained opinion because it was relative in nature and depended largely on his own, independent viewpoint.

*Id.* Here, by contrast, Statement (a) is not "relative in nature and depende[nt] largely on [Dr. Brown's] own, independent viewpoint." *Id.*

[8] Dr. Brown, in his motion to strike in the circuit court, alleged that Statement (a) lacked "sting." However, he does not assert that Statement (a) lacked "sting" on brief to this Court, nor did he raise it at oral argument before us. Hence, we find it abandoned on appeal and do not address it. *See* Rule 5A:20(e); *see also Farmer v. Commonwealth*, 62 Va. App. 285, 295 (2013).

[9] See *supra* note 6 for the full text of the paragraph in which this statement appeared.

- 11 -

unwillingness to follow the Board of Dentistry's guidelines and regulations. The public accusation that Dr. Grundy would not provide his supervising dentist with an explanation for knowingly disregarding guidelines from his profession's governing body is defamatory because such an accusation would "tend[] so to harm the reputation of [a dentist] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him," *Schaecher*, 290 Va. at 91-92 (quoting Restatement (Second) of Torts § 559), and it carries requisite "sting" as it would "render [a dentist] odious, infamous, or ridiculous, or subject to disgrace, shame, scorn, or contempt," *id.* at 101.[10]

Lastly, Dr. Brown argues that "Statement (c) is relatively weak" when compared to the following statement from *Schaecher* that was found to lack "sting": "It would appear that [plaintiff] was not totally truthful . . . ." 290 Va. at 101 (second alteration in original). But this argument fails to provide relevant context. There, the Supreme Court noted that the defendant's "concluding sentence is in the nature of a summary that hedges her prior statement ('. . . not *totally* truthful')." *Id.* (alteration in original). Moreover, the Court found that the characterization "[wa]s married to a single and relatively benign particular fact regarding whether Schaecher was operating a commercial kennel, and so does not necessarily impugn Schaecher's character as a whole." *Id.* at 102. Thus, the Court concluded that while the statement was "unpleasant," it failed to "meet the threshold for defamatory 'sting.'" *Id.* at 101-02.

Dr. Brown's allegation that Dr. Grundy refused to adhere to Board of Dentistry guidelines was not similarly "relatively benign" but cast serious doubt about Dr. Grundy's fitness to practice dentistry. *See id.* at 102. When viewed in context, the statement not only implies—

---

[10] Citing *Fleming*, Dr. Brown also argues that "Grundy's purported unwillingness to explain his actions carries no imputation that is '"necessarily hurtful" in its effect' on Grundy's profession as a dentist; the requisite 'nexus' is missing." This argument is waived because it relates to defamation per se and not whether the statement contains the requisite defamatory "sting." *See supra* note 5.

for the third time—that Dr. Grundy refused to adhere to applicable regulations and guidelines but also that he would not provide a reason for doing so. *Cf. Adams v. Lawson*, 58 Va. (17 Gratt.) 250, 256 (1867) ("The plaintiff is advised to 'quit lying' and to 'stop swearing to lies,' which plainly imports, according to the common acceptation of language, that he has been telling lies and swearing to lies."). Thus, there is sufficient "sting" in Statement (c) for it to be actionable as a defamatory statement.[11]

> E. *Statement (f): "In addition to the reasons above, the termination is also due, in part, to complaints. If Dr. Grundy has said anything to you in the office or on the phone, that makes you uncomfortable, or that you consider inappropriate, please notify a manager or me so that we can confidentially and privately document the interaction."*[12]

Dr. Brown argues that this statement is not actionable because the second sentence is "not a statement of fact" and that the statement as a whole lacks the requisite "sting," as recipients of the letter were "left without real guidance as to what the complaints might be about." We disagree.

First, Dr. Brown argues that Statement (f) is nonactionable because the second sentence is not false or capable of being proven so. He argues that "[i]t is couched in terms of 'if' and is directive of what to do in that event."

"Where, as here, a plaintiff alleges that he has been defamed not by statements of fact that are literally true but by an implication arising from them, the alleged implication must be reasonably drawn from the words actually used." *Webb*, 287 Va. at 89. "[I]t is not necessary that the defamatory charge be in direct terms but it may be made indirectly, and it matters not how artful or

---

[11] In his motion to strike in the circuit court, Dr. Brown also argued that the first clause of Statement (c) was not capable of being proven true or false. However, he does not make the same argument on brief, nor did he raise it at oral argument before us. Hence, we find it abandoned on appeal and do not address it. *See* Rule 5A:20(e); *Farmer*, 62 Va. App. at 295.

[12] Statement (f) includes the first two sentences in a paragraph. The third, and final, sentence of the paragraph states: "If you have any concerns or questions regarding treatment you have received from Dr. Grundy feel free to contact me directly."

disguised the modes in which the meaning is concealed if it is in fact defamatory." *Carwile*, 196 Va. at 7.

The second sentence is a directive statement, as argued by Dr. Brown, but following a sentence about how patients have complained about Dr. Grundy—a statement capable of being proven true or false—the second sentence of Statement (f) establishes the implication that the complaints were of and concerning inappropriate comments made by Dr. Grundy. This makes the second sentence unlike those in *Padula-Wilson v. Landry*, 298 Va. 565 (2020), as the directive statement here is accompanied by a provably true or false statement, not one of opinion.[13] Moreover, the December 4th letter does not disclose the factual bases for the complaints. Thus, a reasonable person who received the December 4th letter would not have perceived Statement (f) as one based on Dr. Brown's "subjective understanding of the underlying scenario," but rather as one based on "an implied factual predicate," with the predicate being that the complaints were made in response to inappropriate comments.[14] *Schaecher*, 290 Va. at 106.

---

[13] In *Padula-Wilson*, the Supreme Court found that several statements of a court-appointed mental evaluator "generated in connection with her work in [a] custody case" were not actionable for defamation. 298 Va. at 569-73, 579-81. Among them were statements that the Court found to be "merely directives or expressions of what [the evaluator] intended to do; they d[id] not directly address [the plaintiff] at all." *Id.* at 580. Moreover, the Court found that the statements accompanying the directives "that cast [the plaintiff] in a negative light" constituted expressions of opinion and were not actionable. *Id.* As a whole, the Court found that "the context and general tenor of [the] statements contained constitutionally protected subjective views" and implied that the opinions "'fully disclos[ed] their factual bases.'" *Id.* at 581 (quoting *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184-85 (4th Cir. 1998)).

[14] Dr. Brown argues that

> Dr. Brown does not include specific reasons for the complaints or identify any inappropriate or discomfort-provoking topic. The following (third) sentence in the paragraph adds to the vagueness by relating to "concerns or questions regarding treatment you have received from Dr. Grundy[.]" The reader is left without real guidance as to what the complaints might be about.

Dr. Brown alternatively argues that "what one person might deem inappropriate or that might make her or him feel uncomfortable is subjective," so Dr. Brown's statement is one of opinion. This argument is also unpersuasive. Following immediately after a sentence about how Dr. Brown had received complaints about Dr. Grundy, this sentence does not imply that Dr. Brown himself had characterized Dr. Grundy's statements or actions as inappropriate or discomforting. Instead, the "fair inference" is that *patients* had told Dr. Brown that Dr. Grundy had said inappropriate things to *them* or that he had made *them* feel uncomfortable. *See Webb*, 287 Va. at 89 (quoting *Carwile*, 196 Va. at 8). This conclusion does not require us to extend the innuendo of the text "beyond its ordinary and common acceptation," such as by "introduc[ing] new matter," *id.* (quoting *Carwile*, 196 Va. at 8), because the statement is comprised of both sentences, and when read together, the implication is that the "complaints" referenced in the former sentence are related to whether "Dr. Grundy has said anything to you . . . that makes you uncomfortable, or that you consider inappropriate." Whether patients did so report is a matter that is provably true or false, so this statement is not mere opinion.

Second, Dr. Brown argues that the statement lacks sufficient defamatory "sting."[15] For this proposition, he cites to *Nestler v. Scarabelli*, where the plaintiff alleged that one of the defendants had "uttered five defamatory statements: (1) 'based on multiple complaints raised against you by interns,' (2) 'concerns that were raised,' (3) 'multiple complaints have been raised,' (4)

___

(Alteration in original). This illustrates our point. If a reader is "left without real guidance as to what the complaints might be about," it is reasonable to assume that they will seek guidance through context. Here, that context is provided in the second sentence of Statement (f), which implies that the substance of the complaints dealt with inappropriate comments made by Dr. Grundy.

[15] We assume without deciding that Dr. Brown has preserved this argument for appeal. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) ("[I]n cases where the ability of the Court to review an issue on appeal is in doubt, we may 'assume without deciding' that the issue can be reviewed provided that this permits us to resolve the appeal on the best and narrowest grounds.").

'administrative leave,' and (5) 'Dr. Scarabelli was placed on administrative leave.'" 77 Va. App. at 458. This Court held that the statements "constituted mere observations" and "contained no defamatory sting on their face." *Id.* at 459-60.

Although some of the verbiage here (e.g., "complaints") mirrors that used in *Nestler*, the statements in *Nestler* were presented in isolation and without context. *See* 77 Va. App. at 458. By contrast, the first sentence of Statement (f) appears in a paragraph that invites patients to discuss times when Dr. Grundy allegedly said inappropriate things or made them feel uncomfortable.[16] As discussed, the "fair inference" is that patients complained that Dr. Grundy made inappropriate remarks and made them feel uncomfortable. *See Webb*, 287 Va. at 89 (quoting *Carwile*, 196 Va. at 8). Dr. Brown emphatically denies that any innuendo is "sexual in nature." We need not decide that question, however, as casting a dentist who is reliant on attracting and retaining patients as one who makes inappropriate remarks that make patients feel uncomfortable would "'harm the reputation of [a dentist] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him,' such as by making the [dentist] appear odious, infamous, or ridiculous, or subjecting h[im] to contempt, scorn, shame, or disgrace." *Schaecher*, 290 Va. at 95 (quoting Restatement (Second) of Torts § 559). Thus, this statement is actionable regardless of whether the lack of professionalism was based in sexual misconduct. *See id.* at 91-92.

---

[16] Additionally, unlike the plaintiff in *Nestler* who "appeared to recognize the utter lack of merit in the defamation claims . . . as they quietly agreed to remove [them]," *see* 77 Va. App. at 459, Dr. Brown admitted that "there is an inference that could be made" that the second sentence refers to the first.

F. *Statement (g): "There is some additional information that I am required to give to you. The [D]epartment of Health and Human Services OCR oversees HIPAA and the protection of patients' private information. There are also now issues related to Dr. Grundy's handling of his former patients' protected personal and private information."*[17]

Citing to *Handberg*, Dr. Brown argues that the first two sentences' inclusion in the jury instruction constitutes reversible error because they are merely contextual, not defamatory. He also argues that that the third sentence in Statement (g) makes the statement nonactionable because it is only an opinion. Lastly, he argues that the innuendo of Statement (g) cannot be interpreted "to imply or otherwise impute professional wrongdoing to [Dr.] Grundy." We disagree.

The comparison to *Handberg* fails because the reversible error in *Handberg* was based on the inclusion of opinion statements alongside factual statements in the jury instruction about defamation. 297 Va. at 663-64, 671. There, an email containing statements actionable for defamation—and statements that were nonactionable statements of opinion—was published to the jury, with the instruction that they were "to determine whether 'the statements in the . . . email were false.'" *Id.* at 665. The trial court did not "specifically instruct the jury as to the actionable factual statements that the jury c[ould] consider in determining whether the defendant defamed the

---

[17] In full, the paragraph in which this statement appears reads:

> *There is some additional information that I am required to give to you. The Department of Health and Human Services OCR oversees HIPAA and the protection of patients' private information. There are also now issues related to Dr. Grundy's handling of his former patients' protected personal and private information.* Patients who have seen only Dr. Grundy at this practice may receive an additional letter from us regarding this matter. This will occur if the Department of Health and Human Services deems it necessary and orders us to do so. If you have seen any of the other doctors at this practice or seen several different doctors here you will receive no further information. Your protected information was not affected.

(Emphasis added).

plaintiff'—rather, "the jury was . . . permitted to find [nonactionable statements of opinion] to be defamatory[,] and in the absence . . . of a special verdict, there [wa]s no way to determine whether the jury based any or all of its defamation verdict on one or more of [such] statements." *Id.* at 671-72. In *Handberg*, there was thus a chance that the jury had found the defendant liable based on nonactionable statements of opinion. *Id.* at 671. There is no such possibility here, as the first two sentences in Statement (g) are not opinions but factual statements capable of being proven true or false. *See Hyland*, 277 Va. at 48 ("[T]he factual portions of an allegedly defamatory statement may not be evaluated for truth or falsity in isolation, but must be considered in view of any accompanying opinion and other stated facts.").

Moreover, even if the first two sentences may be "literally true," both statements convey an "implication" that can be "reasonably drawn from the words actually used." *Webb*, 287 Va. at 89. When read in context, the first sentence in Statement (g) insinuates that Dr. Grundy has mishandled patients' protected information—an action of such gravity that Dr. Brown was *required* to inform affected patients.[18] And the second sentence, when read in context, implies that Dr. Grundy has violated laws protecting patients' protected information, including HIPAA. Dr. Brown argues that these first two sentences are "purely contextual sentences and unneeded to understand the third sentence[]" and that the jury had the letter for context. But this argument misapprehends the innuendo that flows from each of the first two sentences in Statement (g), because even when viewed separately, the innuendo of the first two sentences conveys the message that is expressly conveyed in the third. *Cf. Carwile*, 196 Va. at 2, 8-9.[19] Put differently, the first two sentences in

_____

[18] The circuit court, at the March 31, 2022 hearing at which the jury instructions were discussed, noted that this sentence implies that "Dr. Brown is somehow required . . . to disclose the fact of these issues like he's a mandatory reporter."

[19] In *Carwile*, an attorney "publicly charg[ed] that graft, corruption and bribery existed in the Richmond City Police Department" and "demanded a grand jury investigation." 196 Va. at 3. The Richmond Times-Dispatch published an article after the grand jury was impaneled and

Statement (g), if isolated from the third and presented to the jury as a separate statement, convey a provably false message by "inference, implication or insinuation." *Pendleton*, 290 Va. at 172. Thus, the circuit court did not err in its gatekeeping function by grouping the first two sentences with the third in crafting Jury Instruction C-1.

Dr. Brown also argues that the third sentence in Statement (g) makes the statement nonactionable because it is only an opinion. Specifically, he argues that it is "Dr. Brown's viewpoint as to the existence of privacy related 'issues.'" Dr. Brown notes that in *Padula-Wilson*, the psychologist's opinions about the mother's fitness for custody and visitation were found nonactionable and that "Dr. Brown's viewpoint as to the existence of privacy-related 'issues' rises

---

"failed to return an indictment" containing the following statement: "Under the State Code, the State Bar as an administrative agency of the Supreme Court of Appeals may request a court of competent jurisdiction to disbar an attorney for violation of the ethical code governing the professional conduct of attorneys." *Id.* It is unnecessary to restate the entirety of the publication, for the Supreme Court summarized its reasoning and holding as follows:

> A reading of the publication reveals that the defendant through its reporter initiated an inquiry of certain named officials of the city of Richmond as to whether any action would be taken against the plaintiff for his having preferred charges which "cast a shadow across the entire Police Department," and when the reporter failed to get a definite reply to his suggestive question, he wrote: "Under the State Code, the State Bar as an administrative agency of the Supreme Court of Appeals may request a court of competent jurisdiction to disbar an attorney for violation of the ethical code governing the professional conduct of attorneys." When considered under the rules applicable to the motion for a summary judgment, it is a reasonable implication of this language, read in connection with the whole article, that the plaintiff is guilty of unethical and unprofessional conduct for his charges made against the Police Department; for which conduct the defendant suggests in a veiled but pointed way that the plaintiff could and should be subjected to disbarment proceedings under Code[] § 54-74, *et seq.*

*Id.* at 8-9. Here, the first two sentences are like the defamatory language from *Carwile* in that they may be literally true out of context, but in context, they "suggest[] in a veiled but pointed way" that Dr. Brown has committed a serious violation of his patients' privacy. *See id.* at 9.

no higher than the 'concerns' about the plaintiff's behavior . . . in *Padula-Wilson*." *See* 298 Va. at 579-80. Here, however, in the context of the entire statement, which references the Department of Health and Human Services OCR and information that Dr. Brown is "required to give," a reader could draw the "fair inference" that the third sentence implies that the Department of Health and Human Services OCR, not Dr. Brown, had raised issues with Dr. Grundy's handling of patients' information.[20] *See Webb*, 287 Va. at 89. Whether it had is a question of fact, not opinion.

Lastly, Dr. Brown argues that the language in Statement (g) cannot be "necessarily hurtful" to Dr. Grundy's business because it is "far less inflammatory than the non-actionable statements in *Fuste*."[21] *See* 265 Va. at 133. There, two plaintiff-pediatricians formerly employed at a healthcare practice alleged that the defendant-healthcare practice and its agents "defamed them in order to harm the plaintiffs' new medical practice." *Id.* at 130. They alleged that the defendants made statements to "patients, agents of other hospitals, and credentialing officials at [other hospitals] that [the plaintiffs] were 'unprofessional' and 'uncooperative.'" *Id.* Additionally, the pediatricians alleged that the defendants made the following statements: that they "would 'never be put back on the Healthkeepers list of providers because of the way they left Riverside'"; that they "had 'left suddenly,' 'were not able to work in the area,' and 'their whereabouts were unknown'"; "that they had 'left suddenly and that she should find another pediatrician'"; and that their "new practice

---

[20] This inference is further supported by subsequent language immediately following Statement (g) in the letter, "Patients who have seen only Dr. Grundy at this practice may receive an additional letter from us regarding this matter. This will occur if the Department of Health and Human Services deems it necessary and orders us to do so." With this context, it is reasonable to infer that Dr. Brown would not have divulged the fact that there were issues relating to Dr. Grundy's handling of patients' information unless "the Department of Health and Human Services deem[ed] it necessary and order[ed] [him] to do so." By invoking the authority of the Department of Health and Human Services, Dr. Brown again insinuates that he is not expressing *his* viewpoint, but that of a government agency.

[21] This argument is waived to the extent it litigates whether Statement (g) is actionable per se. *See supra* note 5. However, we assume without deciding that Dr. Brown has preserved his argument that Statement (g) lacks "sting." *See McGinnis*, 296 Va. at 501.

would be immediately shut down." *Id.* at 130-31.  The Court ruled that these "statements [we]re either dependent on the speaker's viewpoint and are, therefore, expressions of opinion, do not prejudice the doctors in their professions, or, taken 'in their plain and natural meaning,' [we]re not defamatory." *Id.* at 133 (citations omitted).  Problematically for Dr. Brown, the Court did not specify which of the three categories each statement fell into.  Having held that Statement (g) is not an expression of opinion, and due to the sensitive nature of a patient's healthcare information[22]— which was not at issue in *Fuste*—we find that this statement has the requisite "sting" and is thus an actionable statement.

## III. CONCLUSION

Contrary to Dr. Brown's assertions on appeal, when viewed in context, Statements (a), (f), and (g) are capable of being proven true or false, either directly or by implication, *see Fuste*, 265 Va. at 133; *Handberg*, 297 Va. at 669-70, and Statements (c), (f), and (g) contain the requisite defamatory "sting," either facially or by innuendo, *see Schaecher*, 290 Va. at 93.  The circuit court thus properly performed its gatekeeping function by allowing the jury to consider the challenged statements in Jury Instruction C-1 as the basis for a finding of defamation per se.  Accordingly, we affirm the circuit court's judgment.

*Affirmed.*

---

[22] At the March 31, 2022 hearing, counsel for Dr. Brown agreed with the circuit court's statement that "issues related to Dr. Grundy's handling of former patients' [information] . . . would reflect poorly on one's ability to practice in the medical field."